UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

LUCY AMADOR, et al., on behalf of themselves
and all others similarly situated,

                    Plaintiffs,

    – against –

SUPERINTENDENTS OF THE DEPARTMENT
OF CORRECTIONAL SERVICES ("DOCS")
ANGINELL ANDREWS,

                  Defendants.

-------------------------------------------------------- x

06:10–cv–06702 (DGL) (JWF)

**PLAINTIFF LUCY TASAMA'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ROBERT SMITH'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

DEBEVOISE & PLIMPTON LLP
Svetlana M. Eisenberg
Charles W. Baxter
Laura C. Carey
919 Third Avenue
New York, New York 10022
Telephone (212) 909-6000
smeisenberg@debevoise.com
cwbaxter@debevoise.com
lccarey@debevoise.com

THE LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT
Dori Lewis
Veronica Vela
199 Water Street, 6th Floor
New York, New York 10038
Telephone (212) 577-3530
dlewis@legal-aid.org
vvela@legal-aid.org

Dated:  April 6, 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT PROCEDURAL HISTORY.................................................................2

STATEMENT OF FACTS.........................................................................................4

ARGUMENT.............................................................................................................6

I.      Defendant's sole basis for this motion—that the record allegedly cannot support a jury finding that his misconduct was objectively sufficiently serious to constitute an Eighth Amendment violation—is at odds with well-settled judicial precedent and draws no support from the cases he cites. ....................................................6

II.     Defendant's meritless motion is also untimely................................................13

CONCLUSION ......................................................................................................14

## TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................6

*Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997) ...............................1, 7, 9, 10, 12, 13

*Bromell v. Idaho Dep't of Corr.*, CVNo. 05-419 N-LMB, 2006 WL 3197157 (D. Id. Oct. 31, 2006) ..................................................................................................................................9

*Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003) .........................................................8

*Colman v. Vasquez*, 142 F. Supp. 2d 226 (D. Conn. 2001) .......................................9, 12

*Davis v. Castleberry*, 364 F. Supp. 2d 319 (W.D.N.Y. 2005) .................................10, 12

*Farmer v. Brennan*, 511 U.S. 825 (1994) ..................................................................1, 7

*Gregg v. Georgia*, 428 U.S. 153 (1976) ..........................................................................1

*Hudson v. McMillian*, 503 U.S. 1 (1992) ...............................................................11, 12

*Jacobs v. Durko*, Civil Action No. 04-1941, 2007 WL 2769436 (W.D. Pa. Sept. 17, 2007)......8, 9

*Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179 (N.D.N.Y. Jul. 13, 2011) .....................10, 12

*Jordan v. Gardner*, 986 F.2d 1521, 1539 (9th Cir. 1993) .............................................12

*Lewis v. Fischer*, No. 08-CV-3027 (JG)(LB), 2009 WL 689803 (E.D.N.Y. Mar 12, 2009).....7, 11

*Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) ......................................10, 12

*Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005) ..........................10, 11, 12

*Penry v. Lynaugh*, 492 U.S. 302 (1989) ........................................................................12

*Rodriguez v. McClenning*, 399 F. Supp. 2d 228 (S.D.N.Y. 2005) .................8, 10, 12, 13

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) .....................................................8

*Silvagnoli v. Fischer*, No. 9:07-CV-561(NAM/GJD), 2010 WL 1063849 (N.D.N.Y. March 1, 2010) ....................................................................................................10, 11, 12

*Stern v. Trs. of Columbia Univ.*, 131 F.3d 305 (2d. Cir. 1997) .......................................6

*Trammel v. Keane*, 338 F.3d 155 (2d Cir. 2003) ..........................................................10

*Williams v. Fitch*, 550 F. Supp. 2d 413 (W.D.N.Y. 2008) ...........................................11

*Williams v. Prudden*, 67 Fed. Appx. 976 (8th Cir. 2003) ................................................8

**STATUTES**

18 U.S.C. § 2243(b), § 2244(a)(3) ....................................................................................9

42 U.S.C § 1983.........................................................................................................1, 2

N.Y. Penal Law § 130 .......................................................................................................9

N.Y. Penal Law § 130.05(3)(e).........................................................................................9

N.Y. Penal Law § 130.60(1) ............................................................................................9

**RULES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ........................................................................................................6

Fed. R. Civ. P. 56(b) ......................................................................................................13

Fed. R. Civ. P. 56.1..........................................................................................................4

11 *Moore's Federal Practice- Civil* § 56.121 (3d ed. 2012) ........................................14

Nat'l Prison Rape Elimination Comm'n, *Commission Report* 37 (2009), *available at*
www.ncjrs.gov/pdffiles1/ 226680.pdf .............................................................................9

## PRELIMINARY STATEMENT

From the fall of 2000 through the beginning of summer 2001, defendant Robert Smith, a corrections officer at Albion Correctional Facility, sexually abused the plaintiff Lucy Tasama (formerly Amador). Repeatedly and against Ms. Tasama's will, Officer Smith grabbed her breasts and buttocks, forcibly kissed her, and on a final occasion, exposed his penis to her while indicating with the motion of his tongue that he expected her to perform oral sex. While incarceration was part of her sentence, repeated sexual abuse by a corrections officer and the resulting fear and severe psychological trauma certainly were not. "[S]exual abuse of a prisoner by a corrections officer . . . is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Ms. Tasama filed this lawsuit under 42 U.S.C § 1983 for defendant's violations of (i) her right to be free of cruel and unusual punishment under the Eighth Amendment of the United States Constitution;[1] and (ii) violation of her Due Process rights under the Fourteenth Amendment. Discovery is complete, and the case is ready to go to trial.

In moving for summary judgment on Ms. Tasama's Eighth Amendment claim, the defendant does not argue that there are no genuinely disputed material facts. Instead, he merely contends that the abuse alleged does not, as a matter of law, rise to the level of a constitutional injury. While, concededly, in certain cases, courts and litigants understandably struggle with whether the particular allegations are sufficiently severe to state a constitutional claim, it is now

---

[1]    Treatment of a prisoner violates the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain." *Boddie*, 105 F.3d at 861 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Gregg v. Georgia*, 428 U.S. 153, 183 (1976) (the Eighth Amendment forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering").

well settled that the allegations of the type asserted here are plainly sufficient. The authorities on which the defendant relies are not to the contrary. Ms. Tasama respectfully requests that the Court therefore deny defendant Smith's motion and join the multiple other courts that, presented with similar allegations, held that they stated a claim cognizable under the Eighth Amendment and thus were worthy of consideration by a jury.

Defendant's motion also fails on procedural grounds. Under the case management order entered by the United States District Court for the Southern District, defendant's summary judgment motion is almost two years late. Yet, he offers no excuse for the delay or for raising only now arguments that he easily could have raised long ago.

## RELEVANT PROCEDURAL HISTORY

Ms. Tasama brought her claim for damages against Officer Smith on January 28, 2003 under Section 1983 of Title 42 of the United States Code. Her claim alleges a violation of her constitutional right to be free of cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Ms. Tasama brought her claim against Officer Smith alongside other women who filed for similar misconduct claims against other corrections officer defendants. Ms. Tasama filed her complaint in the United States District Court for the Southern District of New York.

On October 28, 2003, Officer Smith moved for summary judgment, arguing that Ms. Tasama failed to exhaust administrative remedies. Def.'s Mem. of Law, October 28, 2003

("1st SJM") (Ex. 1)[2] at 3.  The court (the Honorable Kevin Duffy) denied that motion after

reconsideration on March 27, 2008.  Order, March 27, 2008 (Ex. 2).

More than six years after this first motion was filed, on February 24, 2010, Judge Duffy

issued a scheduling order setting March 1, 2010 as the deadline for certain parties, including

Defendant Smith, to serve dispositive pre-trial motions.  Order, March 1, 2010 (Ex. 3).

Defendant Smith then served on Ms. Tasama a second motion for summary judgment,

this time arguing solely that no jury could find that the Defendant's conduct was what caused her

injury.  Def.'s Mem. of Law, Feb. 25, 2010 at 3 ("2nd SJM") (Ex. 4).  Ms. Tasama served her

opposition on April 26, 2010, but defendant Smith served no reply.  Pl.'s Opp'n to Def.'s Mot.

for Summ. J., Apr. 26, 2010 (Ex. 5).  The court therefore denied his second motion for summary

judgment as "abandoned."  Order, July 13, 2010 (Ex. 6).[3]

Later in 2010, Judge Duffy granted Defendant Smith's motion to sever Ms. Tasama's

claim against him from the rest of the case and transferred it to this Court.  Order, Dec. 7, 2010

(Ex. 7).

On February 13, 2012, the defendant filed his third motion for summary judgment,

contending for the first time since Ms. Tasama filed her claim that his alleged conduct does not

rise to the level of a constitutionally cognizable claim.

---

[2]   All citations to "Ex. _" refer to exhibits to Plaintiff's April 6, 2012 Appendix to Local Rule
      56 Statement of Material Fact.  Plaintiff Lucy Tasama's Local Rule 56 Statement of Material
      Fact and Response to Defendant Robert Smith's Statement is cited as "SMF."  The
      memorandum of law Officer Smith submitted in support of his motion is cited as "Smith Br."

[3]   Other parties filed fully briefed summary judgment motions, which the Court then decided on
      the merits.

## STATEMENT OF FACTS

After entering the custody of the New York Department of Correctional Services ("DOCS", now the Department of Corrections and Community Supervision) in October 1999, Ms. Tasama was transferred to Albion Correctional Facility ("Albion"), where she stayed until 2002. Ms. Tasama was later transferred to Taconic Correctional Facility and subsequently released and deported to her native Colombia.

Officer Smith was, and apparently remains, employed as a DOCS corrections officer. SMF ¶ 1. In 2000 and 2001, he supervised a basement classroom area where Ms. Tasama attended classes. SMF ¶ 3, 5.

Ms. Tasama has suffered from a long history of traumatic sexual abuse. This history includes abuse at age five where she was sexually assaulted by her grandfather and at age fourteen by her father's friend. She was repeatedly physically abused by her first husband, and at age 24 was sexually assaulted at knife-point by three men who broke into her home. SMF ¶ 20.

As Ms. Tasama testified at her deposition, beginning in November 2000 and continuing for several months until the summer of 2001, Officer Smith inflicted severe psychological injury on Ms. Tasama through a campaign of repeated sexual abuse:

- In November 2000, on a break, Ms. Tasama left her classroom to walk outside in the yard. SMF ¶ 15. Officer Smith followed Ms. Tasama into the yard and "began to tell [her] that he had a place in C-block Basement where [they] could be alone . . . and that there [they] could have a relationship because he used that place to have relations with other prisoners." *Id.* After this proposal, Officer Smith "extended his hand and he touched [Ms. Tasama] on [her] bottom." *Id.*

4

- Soon after this incident, Ms. Tasama returned to C-block Basement, to finish her class. SMF ¶ 16. At the completion of the class, and during the 10-minute period where inmates are permitted to move between prison facilities, Officer Smith asked Ms. Tasama to help with some garbage. *Id.* Once Ms. Tasama missed her opportunity to leave C-block Basement, he forcibly "kissed" her and "touch[ed] [her] breasts." *Id.*

- Again forced to go to C-block Basement for her classes, Ms. Tasama encountered Officer Smith on an afternoon where the teacher failed to arrive for her class. SMF ¶ 17. On this occasion, Officer Smith "fondled" her breasts and buttocks and again forcibly kissed Ms. Tasama and "used his tongue." *Id.* Ms. Tasama pushed Officer Smith away with her hands, at which point he told her that "Hispanics were only good for prostitution and that [she] was no exception to that, so he could not understand why [she] didn't like it." *Id.* Officer Smith went on to indicate that "he had sexual relations with other prisoners and that was normal" and that if Ms. Tasama "wanted a favor" she could have a sexual relationship with him. *Id.*

- In mid-May 2001, when Ms. Tasama was waiting to be allowed to move from Basement C, Officer Smith opened a locked door and stepped into a storage room so that only Ms. Tasama could see him. SMF ¶ 18. He called to Ms. Tasama by name, and when she looked, "Officer Smith had dropped his pants and his underwear, and he was holding up his penis and he was making a kind of movement with his tongue." *Id.* Ms. Tasama understood the movement of

Officer Smith's tongue to mean that he wanted Ms. Tasama to perform oral sex. *Id.*

When Ms. Tasama complained to prison and DOCS officials about the defendant's abuse, he retaliated against her by preventing her from working at her assigned job and from attending prison classes. SMF ¶ 19.

Defendant Smith's conduct caused Ms. Tasama to become very distressed and depressed. SMF ¶ 21. In July 2001, after enduring months of sexual harassment and abuse by Officer Smith, Ms. Tasama began seeing a counselor from the Office of Mental Health ("OMH") at Albion. At Ms. Tasama's first visit to the OMH, her counselor noted symptoms of crying, vomiting, excessive sleep, nightmares, hypervigilance, and flashbacks and diagnosed Ms. Tasama with major depression and Post-Traumatic Stress Disorder. SMF ¶ 22.

Ms. Tasama continued to experience anxiety, depression, and nightmares. SMF ¶¶ 23-25. She continued to go to counseling for several months, where she attributed her symptoms to ongoing sexual harassment by an officer at Albion. *Id.*

## ARGUMENT

I.   **Defendant's sole basis for this motion—that the record allegedly cannot support a jury finding that his misconduct was objectively sufficiently serious to constitute an Eighth Amendment violation—is at odds with well-settled judicial precedent and draws no support from the cases he cites.**

Summary judgment is not appropriate here because the defendant has failed to show that, when all ambiguities are resolved in Ms. Tasama's favor, her claim should be dismissed as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d. Cir. 1997) (reinstating a claim and noting that "[i]n assessing the record to determine whether there is [a genuine issue of

material fact], the court is required to resolve all ambiguities and draw all permissible factual

inferences in favor of the [non-moving party]").

As the defendant notes (Smith Br. at 1-2), to prevail on her claim, Ms. Tasama must show

that (i) he subjectively knew that his conduct toward her was wrong; and (ii) his abuse was

objectively sufficiently serious to violate the United States Constitution.[4] Notably, the defendant

does not argue that the record cannot support a jury finding of conduct that was subjectively

wrong. The defendant solely claims that no jury could find him liable because his alleged

misconduct was not objectively sufficiently serious.

Defendant's argument, however, is directly at odds with multiple judicial determinations

that allegations of misconduct like his are legally sufficient and should be considered by a jury.

Specifically, courts have held—at the motion-to-dismiss or summary-judgment stage—that the

following allegations—involving misconduct similar to that alleged here—stated an actionable

Eighth Amendment claim:

- Alleged conduct involved a single incident in which a guard "reached inside

  [plaintiff's] pants and fondled his penis and squeezed his testicles" in a non-

  routine pat down. *Lewis v. Fischer*, No. 08-CV-3027 (JG)(LB), 2009 WL

  689803, at *5 (E.D.N.Y. Mar 12, 2009) (denying motion to dismiss);

- Alleged conduct involved a single incident in which a corrections officer

  "conducted [a] pat-frisk in an inappropriate manner that included caressing

  [inmate's] chest and repeatedly groping his genitals and buttocks" while

---

[4]   A prison guard violates the Eighth Amendment when:  (1) his conduct is "objectively,
sufficiently serious" and (2) from a subjective standpoint, he acted with a culpable state of
mind. *See Farmer*, 511 U.S. at 834; *see also Boddie*, 105 F.3d at 861.

responding to the inmate's protestation by saying he "preferred it this way, it's more fun." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 232, 237 (S.D.N.Y. 2005) (denying defendant's motion for summary judgment);

- Plaintiff alleged guards "conducted [a] strip search in a manner designed to demean and humiliate" by making "'ribald comments,' and sexually explicit gestures" and "forc[ing] him to perform sexually provocative acts" through "behavior unrelated to legitimate prison needs." *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (vacating dismissal);

- Alleged conduct involved a single instance in which a male guard "forcibly ground his pelvis against [inmate], grabbed her breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon her." *Williams v. Prudden*, 67 Fed. Appx. 976, 977 (8th Cir. 2003) (vacating dismissal);

- Guard allegedly sexually harassed plaintiff for months and assaulted plaintiff on a single occasion by pushing plaintiff against the bars of a cell and grinding his exposed penis against plaintiff's clothed buttocks. *Schwenk v. Hartford*, 204 F.3d 1187, 1193-94 (9th Cir. 2000) (affirming trial court's denial of summary judgment);

- Alleged conduct involved a single incident in which a guard sexually assaulted inmate by "roughly groping his genitals and buttocks." *Jacobs v. Durko*, Civil Action No. 04-1941, 2007 WL 2769436, at *1, 4 (W.D. Pa. Sept. 17, 2007) (denying defendant's summary judgment motion);

- Alleged conduct involved a single incident in which a male guard approached male inmate from behind "placed his penis against [plaintiff's] buttocks," "ran his hands down to [plaintiff's] penis, squeezed his genitals," and made a sexually demeaning comment. *Bromell v. Idaho Dep't of Corr.*, CVNo. 05-419 N-LMB, 2006 WL 3197157, at *1 (D. Id. Oct. 31, 2006) (denying a motion to dismiss); and

- Alleged conduct involved frequent cross-gender pat down searches conducted on a female inmate housed in a sexual trauma unit. *Colman v. Vasquez*, 142 F. Supp. 2d 226, 236 (D. Conn. 2001) (denying motion to dismiss).

Defendant's invitation that the Court dispose of this case as a matter of law is particularly inappropriate in today's environment, given the recent nationwide criminalization of prison staff's sexual abuse of prisoners. Today, it is a crime for prison staff—in any state or federal prison—to have sexual contact with prisoners.[5] This was not so only a decade ago. And "[t]he 'consistency of the direction of change to states' laws" prohibiting sexual assault of prison

---

[5]   All fifty states have passed legislation that subjects corrections staff to criminal sanctions for engaging in sexual contact with a person in custody. *See* Nat'l Prison Rape Elimination Comm'n, *Commission Report* 37 (2009), *available at* www.ncjrs.gov/pdffiles1/ 226680.pdf; *see also* N.Y. Penal Law § 130.05(3)(e) ("A person is deemed incapable of consent when he or she is . . . committed to the care and custody of the state department of correctional services. . . and the actor is an employee"); N.Y. Penal Law § 130.60(1) (a " person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is . . . [i]ncapable of consent").

Federal law similarly criminalizes such conduct by staff working for the Bureau of Prisons. *See* 18 U.S.C. § 2243(b), § 2244(a)(3).

The revision to N.Y. Penal Law § 130 explicitly applying its provisions to prison officials engaging in any sexual conduct with inmates, became effective on August 1, 1996, three years after the conduct under review in *Boddie* occurred.

inmates by prison employees strongly evidences that the practice is cruel and unusual under the Eighth Amendment. *Rodriguez*, 399 F. Supp. 2d at 238.

Not only is there significant authority supporting a denial of defendant's motion, but the cases on which he relies (Smith Br. at 2) also provide no support for the relief he seeks.[6] For the three reasons set forth below, they are inapposite, and in light of contemporary standards of decency that have over the last decade evolved, of limited relevance.

*First*, defendants in those cases (with the exception of *Silvagnoli v. Fischer*, No. 9:07—CV—561 (NAM/GJD), 2010 WL 1063849 (N.D.N.Y. March 1, 2010)) allegedly violated the Eighth Amendment in the context of a pat frisk, a strip search, or another situation where the alleged conduct arguably had an independent penologically justifiable basis. For instance, in *Johnson v. Enu*, the officer allegedly fondled the plaintiff's groin area while positioning a restraint apparatus upon the plaintiff who was being transported to a different location. *Johnson*, 2011 WL 3439179 at *5; *see also Morrison v. Cortright*, 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005) (Larimer, J.) (defendant was looking for drugs); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (Larimer, J.) (pat frisk); *Montero v. Crusie*, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001) (same); *Boddie*, 105 F.3d at 860 (plaintiff refused an order to take off a sweatshirt that corrections officers believed to be contraband).

In stark contrast, here, the Defendant has not argued—and indeed cannot argue—that there was a penological justification for his conduct when he forcibly tongue-kissed Ms. Tasama,

---

[6] Similarly unavailing are the authorities he cites for the proposition that, to prevail on her claim, Ms. Tasama also must convince the jury that she was denied "the minimal civilized measure of life's necessities." (Br. at 2) Although *Trammel v. Keane*, 338 F.3d 155 (2d Cir. 2003) and *Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179 (N.D.N.Y. Jul. 13, 2011) (citing *Trammel v. Keane*) use this language, its absence from every other case he cites makes clear that the denial of "life's necessities" is not something a plaintiff must show in a sex abuse case.

fondled her breasts, grabbed her buttocks, or exposed his penis to her while indicating his expectation of oral sex. None of these incidents occurred—even pretextually—in the context of a safety or security frisk where a corrections officer might be expected to come into physical contact with an inmate. Indeed, these incidents were accompanied by harassing, degrading and dehumanizing comments such as his statement that "Hispanics were only good for prostitution," attempting to gain Ms. Tasama's acquiescence to sex.

It is well settled that where, as virtually in all cases on which the defendant relies, the alleged misconduct occurred in a penologically justifiable context, courts are reluctant to find an Eighth Amendment violation.[7] Thus, even if the misconduct alleged in the cases the defendant cites were as severe as the defendant's—which, as explained below, it was not—because of their different context, they do not preclude Ms. Tasama's claim as a matter of law.

*Second*, the defendant is incorrect in contending that the alleged misconduct here was "no more egregious than the allegations in the cases [he cites]." (Smith Br. at 3). The cases on which the Defendant relies, did not involve the type of severe and repetitive misconduct at issue here. *E.g.*, *Morrison*, 397 F. Supp. 2d at 425 (one incident of unwanted touching); *Silvagnoli*, 2010 WL 1063849, at *3-4 (defendant massaged shoulders and only tried to grab plaintiff's groin area). None of the cases the defendant cites involved, as here, a defendant's forcing his

---

[7] *Williams v. Fitch*, 550 F. Supp. 2d 413, 413-14 (W.D.N.Y. 2008) (Larimer, J.) (alleged conduct took place after x-rays indicated the inmate was smuggling contraband within his foreskin and defendant justified his examination of the inmate's genitals on that basis); *see also Lewis v. Fischer*, 08-CV-3027 (JG) (LB), 2009 WL 689803, at *5 (E.D.N.Y. Mar. 12, 2009) (noting that context of the challenged conduct informs whether it is sufficiently serious to violate the Eighth Amendment); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ("The objective component of an Eighth Amendment claim is therefore contextual . . . .").

tongue into the inmate's mouth, touching her breasts, or exposing his genitalia to the inmate while indicating expectation of oral sex.[8]

*Finally*, defendant's reliance on *Boddie* is misplaced for the additional reason that *Boddie* was decided 15 years ago, and, in light of the interim evolution in the contemporary standards of decency, at least one court held that even the less severe conduct alleged in *Boddie* can now rise to the level of a constitutional injury. As the United States Supreme Court has long ago made clear, Eighth Amendment claims should be evaluated in light of the contemporary standards of decency. Further, those standards are constantly evolving, and legislative enactments across the country are the clearest evidence of those standards. *Hudson*, 530 U.S. at 8 (the Eighth Amendment standard draws its meaning from and must be responsive to the evolving contemporary standards of decency); *Penry v. Lynaugh*, 492 U.S. 302, 331 (1989), *abrogated on*

---

[8]   In further demonstration that the abuse alleged here is more egregious that the cases on which the defendant relies, plaintiffs in those cases did not appear to allege anywhere near the type of severe, ongoing psychological trauma that Ms. Tasama alleges here. *Compare* SMF at ¶¶ 20-24 *with Boddie*, 105 F.3d 857 (no significant injury alleged from alleged sexual abuse); *Johnson*, 2011 WL 3439179 (same); *Silvagnoli*, 2010 WL 1063849 (same); *Montero*, 153 F. Supp. 2d 368 (same); *Morrison*, 397 F. Supp. 2d 424 (same); *Davis*, 364 F. Supp. 2d 319 (same).

Moreover, none of those cases involved a male guard's abuse of a woman prisoner with a history of severe and repeated sexual trauma before incarceration. *Boddie*, 105 F.3d 857 (alleged abuse of male inmate by female staff, with no record of prisoner's prior abuse); *Silvagnoli*, 2010 WL 1063849 (same); *Morrison*, 397 F. Supp. 2d 424 (alleged abuse of male inmate by male staff with no record of prior abuse of prisoner); *Davis*, 364 F. Supp. 2d 319 (same); *Montero*, 153 F. Supp. 2d 368 (same). Dismissals of those claims are therefore distinguishable and inapposite on this basis as well. The impact of the history of sexual abuse on women prisoners being guarded by male staff in positions of authority has been found to be a critical consideration in determination of the objective severity of abuse. *See Jordan v. Gardner*, 986 F.2d 1521, 1539 (9th Cir. 1993) (prohibiting cross-gender pat frisks in light of the evidence that many women prisoners had long histories of verbal, physical and sexual abuse by men); *see also Colman*, 142 F. Supp. 2d at 232 ("[T]he gender of the inmate and the guard are relevant to the [Eighth Amendment] analysis."). Here, where Ms. Tasama reports a horrific history of sexual abuse and consequent trauma, the repeated intrusive forcible sexual acts of Officer Smith are surely objectively serious.

*other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that in the Eighth Amendment context, the legislation enacted by the country's legislatures is "[t]he clearest and most reliable objective evidence of contemporary values"). As courts confronted with Eighth Amendment claims therefore have noted, in the years after the Second Circuit decided *Boddie*, fifteen additional states have criminalized guards' sexual contact with inmates, recognizing that correctional staff wield almost absolute power over all aspects of women prisoners' daily lives and, as a result, women prisoners frequently believe that they cannot refuse demands for sexual activity.

As a result, today, federal and all fifty states' laws impose criminal penalties for sexual contact between a guard and an inmate. Consequently, at least one court in this circuit held that even conduct that is "similar" to that alleged in *Boddie* is, in light of the interim legislative developments, now actionable under the Eighth Amendment. *Rodriguez*, 399 F. Supp. 2d at 237-38 (holding that defendant's alleged conduct, which was "similar" to that alleged in *Boddie*, formed the basis of a cognizable Eighth Amendment claim because societal standards had evolved since *Boddie*).

## II.   Defendant's meritless motion is also untimely.

Not only does defendant's motion lack merit but it is also untimely. Under Rule 56(b) of the Federal Rules of Civil Procedure, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Prior to granting defendant's motion to transfer this case to this Court, on December 7, 2010, the Honorable Kevin Duffy set March 1, 2010 as the deadline for pre-trial dispositive motions. Order, Feb. 24, 2010 (Ex. 3). Like other defendants, on February 25, 2010, Defendant Smith then served a motion for summary judgment. In the memorandum of law accompanying that motion, he argued that the record allegedly contained no evidence that a

jury could see as tying her injuries to the defendant's misconduct. 2nd SJM at 3 (Ex. 4). After the plaintiff served her opposition, however, for no apparent reason or excuse, the defendant neither served a reply nor, as required by Judge Duffy's rules, filed his motion with the court. As a result, while Judge Duffy considered other parties' motions for summary judgment on their merits, he denied defendant Smith's motion as "abandoned." Order, July 13, 2010 (Ex. 6).

Judge Duffy's denial was then served on the defendant, who at that point could have—but did not—move for reconsideration. Instead, almost two years later, after the case was transferred to this Court, the defendant moves for summary judgment yet again, albeit on a totally different basis. Although he is undoubtedly aware that the motion is belated and asserts arguments he easily could have made in 2010—if not as early as 2003 once Ms. Tasama filed her claim—he offers no excuse for his previous failure to file his prior motion before Judge Duffy, for not asserting his current argument then, nor for waiting for almost two years after Judge Duffy denied his motion as abandoned before he sought the additional relief.

Particularly since the defendant has not even attempted to provide an excuse for his belated filing, it is fully within the Court's discretion to deny the instant motion as untimely. In fact, it has been noted that parties are rarely given "carte blanche" to file as many summary judgment motions as they like. 11 *Moore's Federal Practice - Civil* § 56.121 (3d ed. 2012) ("[T]he traditional view is that multiple summary judgment motions on a series of different issues is disfavored as 'piecemeal' litigation.").

## CONCLUSION

Although the defendant argues that the misconduct alleged was "minimally invasive" (Smith Br. at 3), the extent of its invasiveness is a question that should be resolved by a jury of his peers, not the Court. No case the defendant cites creates a *per se* legal rule that the misconduct alleged here is not as a matter of law actionable under the United States Constitution.

14

Instead, those cases found, on their particular—and distinguishable—facts, that the misconduct alleged there was not extensive enough to rise to the level of a constitutional injury.

Courts have long recognized that the objective seriousness of sexual abuse in the context of an Eighth Amendment claim is a matter of evolving societal standards of decency. For that reason alone—and particularly in light of the recent and uniform legislative criminalization of sexual contact between correctional staff and prisoners—the claim alleged here is the archetype of a claim that is best suited for consideration by a jury. Consistently with multiple rulings in the Second Circuit and elsewhere, Ms. Tasama's factual allegations, none of which the Defendant contests for purposes of this motion, should survive to be tried by a jury. For all of the foregoing reasons, Defendant Robert Smith's motion for summary judgment should be denied.

Dated: April 6, 2012

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP
Svetlana M. Eisenberg
Charles W. Baxter
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000
smeisenberg@debevoise.com
cwbaxter@debevoise.com

THE LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT
Dori Lewis
Veronica Vela
199 Water Street, 6th Floor
New York, New York 10038
Tel.: (212) 577-3530
dlewis@legal-aid.org
vvela@legal-aid.org

*Attorneys for Plaintiff Lucy Tasama*

OF COUNSEL
Laura C. Carey
DEBEVOISE & PLIMPTON LLP

15