UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BETTE JEAN MCDONALD,

        Plaintiff,

     v.

JOHN E. GILBERT, III,

        Defendant.
_____

10-cv-06702 (DGL) (JWF)

Oral Argument Requested

Jury selection begins on
July 9, 2012

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF BETTE JEAN
MCDONALD'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
OF THE CLOSING REPORT AND CONCLUSION
IN THE INSPECTOR GENERAL'S INVESTIGATION
OF BETTE JEAN MCDONALD'S ALLEGATION
PURSUANT TO FEDERAL RULES OF EVIDENCE 403, 803(6) AND 803(8)(C),
AND IN SUPPORT OF PLAINTIFF'S EXHIBIT 141**

| | |
|---|---|
| DEBEVOISE & PLIMPTON LLP | THE LEGAL AID SOCIETY PRISONERS' RIGHTS PROJECT |
| Svetlana M. Eisenberg<br>Kaitlin T. Farrell<br>919 Third Avenue<br>New York, New York 10022<br>Telephone (212) 909-6000<br>*smeisenberg@debevoise.com*<br>*ktfarrell@debevoise.com* | Dori Lewis<br>Veronica Vela<br>199 Water Street, 6th Floor<br>New York, New York 10038<br>Telephone (212) 577-3530<br>*dlewis@legal-aid.org*<br>*vvela@legal-aid.org* |

Dated:  June 29, 2012

- i -

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................1

II. STATEMENT OF FACTS .........................................................................................2

III. ARGUMENT ..............................................................................................................3

    A. The IG's Conclusion ▮▮▮▮▮▮▮▮▮▮▮▮ Should Be Excluded from Evidence ....................................................................................................3

        1. The Investigation Was Incomplete, Not Timely, and Biased ...................................................................................................5

        2. The Standard Needed to Sustain an Allegation of Staff Sexual Abuse is Amorphous and Unreasonable ............................9

    B. The Investigative Conclusion Should be Excluded to Avoid Confusion and Prejudice to the Jury ..........................................................11

    C. If the Investigative Report's Closing and Conclusion ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Are Admitted, Then Exhibit 141 Should Be Admitted Also ............................12

IV. CONCLUSION .........................................................................................................14

# **TABLE OF AUTHORITIES**

**CASES**

*Bracey v. Herringa*, 466 F.2d 702 (7th Cir. 1972) ................................................................. 4, 9

*Evans v. Duggar*, 908 F.2d 801 (11th Cir. 1990) ....................................................................... 12

*Gentile v. Suffolk*, 129 F.R.D. 435 (E.D.N.Y. 1990) ................................................................... 7

*Giles v. Rhodes*, No. 94 Civ. 6835, 2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000) ..................... 9

*Gulf South Mach., Inc. v. Kearney & Trecker Corp.*, 756 F.2d 377 (5th Cir. 1985) .................... 7

*Klein v. Vaneck*, 86 F.Supp.2d 812 (N.D.Ill. 2000) .................................................................... 6

*Lewis v. Velez*, 149 F.R.D. 474 (S.D.N.Y. 1993) .................................................................. 4, 9

*Marria v. Broaddus*, No. 97 Civ. 8297 (NRB), 2003 WL 21782633 (S.D.N.Y. July 31, 2003) ................................................................................................................ 9

*Miranda-Ortiz v. Demming*, No. 94 Civ. 476 (CSH), 1998 WL 765161 (S.D.N.Y. October 29, 1998) ........................................................................................... 11, 12

*Reynolds v. Green*, 184 F.3d 589 (6th Cir. 1999) ....................................................................... 6

*Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993) ..................................................................... 4

*Saks International v. M/V "Export Champion,"* 817 F.2d 1011 (2d Cir. 1987) ......................... 4

*Standard Oil Co. of California v. Moore,* 251 F.2d 188 (9th Cir. 1957) ..................................... 7

*Trepel v. Roadway Express Inc.*, 194 F.3d 708 (6th Cir. 1999) ................................................ 12

*U.S. v. Lemire*, 720 F.2d 1327 (D.C. Cir. 1983) ......................................................................... 7

*U.S. v. Strother*, 49 F. 3d 869 (2d Cir. 1994) .............................................................................. 7

**STATUTES**

Prison Rape Elimination Act of 2003 ("PREA") ....................................................................... 13

U.S.C. § 15601 *et seq*. (2003) ..................................................................................................... 14

U.S.C. § 15603 (2003) ................................................................................................................ 13

I.   **PRELIMINARY STATEMENT**

Plaintiff Bette Jean McDonald moves *in limine* to preclude admission of testimonial and documentary evidence setting forth the Closing and Conclusion ("Conclusion") of the Investigative Report of the Department of Correctional Services ("DOCS," now "DOCCS") Inspector General ("IG") finding that her allegations of sexual harassment and abuse were ▮▮▮▮▮▮▮▮▮▮ This motion is made because the Conclusion contained in this Report does not meet the standard for admissibility under Federal Rules of Evidence ("Rule/Rules or FRE") 803(6) and 803(8)(C), and because the probative value of the Conclusion is outweighed by the danger of unfair prejudice and confusion to the jury, and so does not meet the requirements of Rule 403.  In the event this evidence is admitted, Plaintiff seeks to offer Plaintiff's Exhibit 141, Allen J. Beck & Timothy A. Hughes, Bureau of Just. Stat., U.S. Dep't of Just., NCJ 210333, *Sexual Violence Reported by Correctional Authorities, 2004*, 14 (2005),[1] pursuant to Rule 803(8).[2]

---

[1]   This Report is available at http://bjs.ojp.usdoj.gov/content/pub/pdf/svrca04.pdf.
[2]   That Defendant intended to offer this evidence was not apparent until June 25, 2012, when Plaintiff received Defendant's Pre-Trial Order which contained his final Exhibit List and his Witness List, which contained, for the first time, a description of Mr. Annarino's testimony that Defendant intends to offer at trial.  Also at the Pre-Trial Conference held on that date, this Court asked Plaintiff to submit the evidentiary basis in support of Plaintiff's Proposed Exhibit 141.  Finally, should this Court admit the evidence of Corilynn Lorenzo (formerly Rock and Mullen) or Kristina Muelheisen at this trial, and the IG investigations into their allegations are likewise proffered, Plaintiff seeks a similar ruling as to the conclusions of these investigations since the same rationale would apply, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- 2 -

## II.   STATEMENT OF FACTS

After Ms. McDonald was sexually harassed and abused by Defendant Officer Gilbert, she informed the DOCS Inspector General that this had occurred, detailing the incidents at issue in this case, ranging from an escalating campaign of sexual harassment in which Officer Gilbert repeatedly propositioned her; used sexually explicit and graphic language; pushed her up against the wall, kissed her, and fondled her breasts and buttocks area; exposed his penis to her; and, after she shunned his advances, began to use derogatory and insulting language about her. ██████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████[3] whom Defendant intends to call as a witness. Ms. McDonald described the Defendant's genital area based on his exposure of his penis to her, which she said lasted for only a matter of seconds, and as part of this description stated that she saw two spots near his groin area. ████████████████████ She stated that she did "not know if this was a rash or birth marks." ████████

████████████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

---

[3] ████████████████████████████████████

- 3 -



███████ wrote a disciplinary infraction against Ms. McDonald charging her with lying about these spots and her complaint of sexual abuse. ███████ Ms. McDonald was later found "not guilty" of lying. ███████

## III.  ARGUMENT

### A. The IG's Conclusion ███████ ███████ Should Be Excluded from Evidence.

Prison investigative reports, including their conclusions, are ordinarily admitted into evidence as a public record under Rule 803(6) or as a business record under Rule 803(8). Under either Rule, however, there *must* be indicia of "reliability" and "trustworthiness." *See* Rule 803(6)(E)(limiting business record hearsay exception to

evidence where "neither the source of information nor the method of circumstances of preparation indicate a lack of trustworthiness"); Rule 803(8)(B) (limiting the public record hearsay exception to evidence where "neither the source of information nor the circumstances indicate a lack of trustworthiness"); *see also Saks International v. M/V "Export Champion,"* 817 F.2d 1011, 1013 (2d Cir. 1987) (document must be sufficiently trustworthy to be reliable). If these indicia of trustworthiness and reliability are lacking, the document or testimony is *not* admissible. *See e.g.*, *Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir. 1993) (nurse's progress notes of report by officer held inadmissible "where there is still a dark cloud hovering over this particular business record" given the "officer's motive to fudge the truth…") *Bracey v. Herringa*, 466 F.2d 702, 704-705 (7th Cir. 1972) (reports by prison guards for events for which they are being sued excluded because are "dripping with motivations to misrepresent"); *Lewis v. Velez*, 149 F.R.D. 474, 486 (S.D.N.Y. 1993) (reports by officers not admitted due to "self-interest" of correction officers).

Under Rule 403, even relevant and otherwise admissible evidence should be precluded from admission if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." Fed. R. Evid. 403.

Here, there are numerous reasons why ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ should be excluded. ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████ There is evidence of bias on the part of the investigator who ████████

████████████████████████████████ disciplined her for "lying" ███████ Finally, the standard needed to sustain the allegation is amorphous but to the extent it can be deciphered exceeds that required to sustain a finding of civil liability and approaches—or even exceeds—that required to sustain a criminal conviction.  All of these reasons lead to the conclusion that all evidence concerning the Report's Closing and Conclusion should be excluded since they are without sufficient indicia of reliability, and if admitted, would serve only to prejudice and confuse the jury who will be led to believe that the ultimate question in the case has already been resolved: ██████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

###### 1.     The Investigation Was Incomplete, Not Timely, and Biased.

Ms. McDonald alleged a campaign of sexual harassment and abuse that occurred over a period of months. ████████████████████████████████████████

██████████████████████████████████████████████████████████████

- 6 -

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████ investigations are not thorough. ██████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████ For these reasons alone, his Conclusion is unreliable and should not be admitted. *See Klein v. Vaneck*, 86 F.Supp.2d 812, 820 (N.D.Ill. 2000) (police investigator's conclusion that plaintiff was not credible held not admissible as a public record because of lack of trustworthiness where, *inter alia*, the investigator was not shown to have any specialized expertise in judging credibility or assessing plaintiff's mental illness); *Reynolds v. Green*, 184 F.3d 589, 596 (6th Cir. 1999) (upholding exclusion of report by Correction Ombundsman's Office because it consisted in part of a self-serving statement by plaintiff, plus additional "hearsay within hearsay.")

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████ The examination was not conducted until more than two months after the investigator was informed of Ms. McDonald's observations and almost five months after Officer Gilbert exposed himself to her.

One of the factors courts consider when determining a report's trustworthiness and admissibility is its timelines. See Rule 803(8)(C ) (note of Advisory Committee); *see also Gentile v. Suffolk*, 129 F.R.D. 435, 451 (E.D.N.Y. 1990) (emphasizing the importance of the timely investigations because "it is particularly important to… inspect physical evidence before it is affected by the passage of time or by tampering.") While there is no hard-and-fast rule about how much time is permissible,[4] the important fact is the impact of the time lag on the accuracy of the record at issue. *Standard Oil Co. of California v. Moore,* 251 F.2d 188, 223 (9th Cir. 1957).

Ms. McDonald reported that she saw two marks on Defendant's groin, which she described as a possible "rash." The doctor did not conduct his evaluation of Officer Gilbert until five months after the exposure. The very definition of "rash" indicates that the condition is temporary; thus, a timely evaluation is especially important in this case and waiting five months (or even two months) to evaluate the Defendant is clearly untimely. Because the doctor's evaluation was untimely, ███████████████ is not trustworthy and should not be admitted.

---

[4]   For example, a recording of an event one year and ten days later has been held to be too long for the recording to be timely under the business records exception, *U.S. v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983), as was a record made six months after the events it documented that also contained multiple levels of hearsay. *U.S. v. Strother*, 49 F. 3d 869, 876 (2d Cir. 1994). On the contrary, a logbook recording malfunctions made either simultaneously or within twenty four hours of the event has been held timely under Rule 803(6). *Gulf South Mach., Inc. v. Kearney & Trecker Corp.*, 756 F.2d 377, 381 (5th Cir. 1985).

In addition, however, the investigation was clearly biased. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇ He also attempted to discipline her for "lying" about the spots on Officer Gilbert's groin area even though 1) she herself had candidly admitted she saw it only for a matter of seconds and 2) the examination that did not corroborate her observations was conducted almost five months after she would have seen them and so, of course, the spots could reasonably no longer be visible. The Inspector General's Office is not an independent entity but is part of the Department of Correctional Services, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ actions in attempting to discipline Ms. McDonald for her complaint of sexual abuse were not those of an unbiased investigator who was independently evaluating Ms. McDonald's claim of sexual misconduct. Rather, they belie any claim of independence ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

In this instance, where there are strong indicia of unreliability and untrustworthiness in the methods used by the investigator and evidence of animus towards the prisoner who brought the complaint, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ should not be admitted because they are unreliable and untrustworthy. While courts have rarely looked at the bias of the investigator in keeping out these kinds of records, there is no reason evidence

---

5 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

of bias on the part of the investigator, as opposed to bias and self-interest on the part of the reporting officer, should lead to a different conclusion as to the Report's admissibility. *Cf. Lewis v. Velez*, 149 F.R.D. 474, 486 (S.D.N.Y. 1993) (reports by officers not admitted due to "self-interest" of correction officers); *Bracey v. Herringa*, 466 F.2d 702, 704-705 (7th Cir. 1972) (reports by prison guards for events for which they are being sued excluded because are "dripping with motivations to misrepresent"); *Giles v. Rhodes*, No. 94 Civ. 6835, 2000 WL 1425046, at *8-*9 (S.D.N.Y. Sept. 27, 2000) (prison unusual incident reports are inadmissible hearsay given their "questionable" reliability where the sources of the information had an interest in "self-preservation;); *Marria v. Broaddus*, No. 97 Civ. 8297 (NRB), 2003 WL 21782633, at *16 (S.D.N.Y. July 31, 2003) (prison unusual incident reports and transfer requests held "unreliable" as public records).

### 2. The Standard Needed to Sustain an Allegation of Staff Sexual Abuse is Amorphous and Unreasonable.

██████████████████████████████████████████

████████████ cannot be relied upon because it is based upon a standard which is vague and amorphous but, insofar as it can be ascertained, is a substantially higher standard than the one to be applied by the jury in this civil case and approaches, or perhaps surpasses, that used in a criminal case.

████████████ testified that the standard of proof used to determine whether to substantiate an allegation of staff sexual abuse is not fixed but rather "depends on the case." ████████████████████ That there is no fixed standard used by the IG in determining whether to substantiate an allegation of staff sexual abuse is confirmed by

other IG investigators. *See e.g.*, deposition of Inspector General ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ deposition of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (burden of proof is based upon the "merits of the case"). ▮▮▮▮▮▮▮▮ made clear that in order for him to substantiate an allegation of staff sexual abuse he must be able to "prove" it happened. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He cannot even answer whether the burden of proof needed to sustain an IG investigation into staff sexual abuse is the same as for a criminal conviction, stating that "would be asking for his opinion." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ like those made by Ms. McDonald. The extremely high burden of proof needed to sustain an investigation by the Inspector General concerning staff sexual abuse is likewise confirmed by other IG's. *See e.g.*, deposition of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ deposition of ▮▮▮▮▮▮▮▮▮▮▮▮ (will substantiate only if she can "establish" the misconduct "definitely" took place)▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Where the standard of proof used virtually assures that the prisoner's allegation will not be sustained, where it is higher than that used in a civil trial, and where evidence

---

[6] Depositions of IG investigators referenced herein are attached as Exhibits to the Declaration of Dori A. Lewis.

of the conclusion will prejudice and confuse the jury, the determination that Ms. McDonald's allegation was found ███████████ should be excluded from admission.

### B. The Investigative Conclusion Should be Excluded to Avoid Confusion and Prejudice to the Jury.

Even apart from the lack of trustworthiness evidenced by the lack of completeness and bias shown by the investigator, the Conclusion that Ms. McDonald's allegation was found ███████████ should be precluded from admission because it is a "legal conclusion" and not a "factual finding." *See Miranda-Ortiz v. Demming*, No. 94 Civ. 476 (CSH), 1998 WL 765161, at *1-*2 (S.D.N.Y. October 29, 1998) (court excluded portion of IG report concluding that the plaintiff was not subjected to excessive force, court admitted reports to extent they did not contain "legal conclusions.")

Moreover, allowing the jury to be informed that the investigation was found ███████████ can cause confusion and to prejudice, since the jury will likely believe that the question they are being asked to answer -- whether the allegations of Ms. McDonald are in fact proven by a preponderance of the evidence -- has already been resolved. They will be led to believe that a determination has already been made that Ms. McDonald could not sustain her burden. Given that the standard used by the Inspector General is vague and seemingly much higher than that this jury is being asked to employ, there is a grave risk of misleading the jury. To prevent this prejudice and confusion, evidence concerning the Closing and Conclusion of the investigation into Ms. McDonald's allegations should be excluded.

By this motion, plaintiff does not seek to preclude admission of the entire IG report. Ex. 406. Rather Plaintiff asks only that Mr. Annarino (and any other witness) be

precluded from testifying about its Closing and Conclusion, and that the report be redacted to remove this prejudicial material. That other material is admitted does not mean that the conclusion (and closing) needs to be admitted as well. *See Trepel v. Roadway Express Inc.*, 194 F.3d 708, 718 (6th Cir. 1999) ("[T]he completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded.") Courts have redacted confusing and misleading material. *See Evans v. Duggar*, 908 F.2d 801, 809 (11th Cir. 1990) (upholding the admission of material concerning history of prison medical neglect only in redacted form to eliminate prejudicial and misleading material); *Miranda-Ortiz v. Deming*, No. 94 Civ. 476 (CSH), 1998 WL 765161, at *1-*2 (S.D.N.Y. October 29, 1998) (redacting IG's conclusion that excessive force was not used as an inadmissible legal determination and must be redacted).

If the Court excludes evidence of the Report's Closing and Conclusion that Ms. McDonald's allegation was found ▓▓▓▓▓ the jury will nonetheless be aware that an investigation was conducted. In this situation Plaintiff believes it is appropriate for the Court to instruct the jury that while an investigation was conducted by DOCS, its conclusion is not relevant to the jury's determination.

### C. If the Investigative Report's Closing and Conclusion ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Are Admitted, Then Exhibit 141 Should Be Admitted Also.

If the Court determines that the Investigative Report's Closing and Conclusion that Ms. McDonald's allegations were found ▓▓▓▓▓ are admissible, then Plaintiff, in addition to cross-examining ▓▓▓▓▓ about the meaning of the term "substantiated" and "not substantiated" and his investigative techniques, will offer related

deposition designations, not previously designated, similar to those referenced above, and will proffer Exhibit 141, the Report of the Bureau of Justice Statistics. "*Sexual Violence Reported by Correctional Authorities, 2004.*"

This Report, which sets out the number of complaints of sexual abuse and harassment received by prison and jail authorities including DOCS, as well as their rates of substantiation of these complaints, is admissible under F.R.E. 803(8) as a public record. It is a compilation of statistics required by law to be maintained by prison and jail officials, including DOCS, who in turn are required to submit this information to the Bureau of Justice Statistics, which in turn BJS is required to publish. See Prison Rape Elimination Act of 2003 ("PREA"), 42. U.S.C. § 15603 (2003). As is clear from the face of the Report, its findings are based upon this official data required to be submitted to it by the DOCS as well as other governmental entities.

This document is relevant for two reasons. First, defendants argue that Ms. McDonald failed timely to complain about Officer Gilbert's abuse. This document provides contextual support and a reasonable basis for Ms. McDonald's belief that to complain would be fruitless since New York State's Department of Correctional Services substantiates less than 10% of prisoners' complaints of sexual abuse and harassment. Ex. 141 at 14 (Table 1b). Second, if the Investigative Report's Closing and Conclusion that Ms. McDonald's complaint to the IG was ▮▮▮▮▮▮▮▮▮▮▮▮▮ is allowed into evidence, then this document, which shows that New York's rate of substantiation is not only below 10% but is also one of the lowest in the United States, *id*., will provide additional

support for Plaintiff's contention that DOCS' investigative method, and the conclusions resulting from them, can reasonably and legitimately be questioned.[7]

Finally, if the Court is not inclined to allow this Report in its entirety it can take judicial notice under Rule 201(b) of the rate of substantiation of complaints of staff sexual abuse and harassment by DOCS as reported under its statutory obligation and as set forth in Ex. 141 at 14 (Table 1b)[8] since this is a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Rule 201(b).

## IV. CONCLUSION

For the reasons stated above and because the Conclusion and Closing of the IG investigation finding Ms. McDonald's allegation of sexual abuse against Defendant Officer Gilbert to be ▓▓▓▓▓▓▓▓ does not meet the threshold of reliability required by Rules 803(6) and 803(8)(C), and because admission of this evidence will lead to prejudice and confusion as set forth in Rule 403, this evidence should not be admitted. In the event it is so admitted, Plaintiff reserves her right to offer additional deposition

---

[7] Plaintiff acknowledges that this Report is based on data from 2004 while the incidents in question occurred in 2000-2001. However, the Prison Rape Elimination Act was not enacted until 2003, 42. U.S.C. § 15601 *et seq*. (2003), and this is the first such data available. Moreover, there is no reason to believe that DOCS' rate of substantiation changed during this period; to the contrary this BJS Report and the ones that follow show a remarkable rate of consistency: DOCS has never substantiated more than 10% of the allegations of staff sexual abuse and misconduct it has received and indeed has sometimes substantiated substantially less. *Compare* Ex. 141 *with* Ex. 140, 142 and 143.

[8] Plaintiffs ask the Court to apprise the jury that in 2004, the earliest data available, DOCS received 181 complaints of staff sexual abuse and 99 complaints of staff sexual harassment, and they substantiated less than 7 % of staff sexual abuse complaints and 1% of staff sexual harassment complaints.

designations, to call rebuttal witnesses, and to proffer Ex. 141 as a public record or for the information contained therein to be judicially noticed by this Court.

    Respectfully submitted,

    DEBEVOISE & PLIMPTON LLP

    /s/ Svetlana M. Eisenberg
    Svetlana M. Eisenberg
    Kaitlin T. Farrell
    919 Third Avenue
    New York, New York 10022
    Tel.: (212) 909-6000
    smeisenberg@debevoise.com
    ktfarrell@debevoise.com

    THE LEGAL AID SOCIETY
    PRISONERS' RIGHTS PROJECT
    Dori Lewis
    Veronica Vela
    199 Water Street, 6th Floor
    New York, New York 10038
    Tel.: (212) 577-3530
    dlewis@legal-aid.org
    vvela@legal-aid.org

    *Attorneys for Plaintiff Bette Jean McDonald*